## IN THE SUPREME COURT OF THE STATE OF NEVADA

JANET SOLANDER,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 76228

FILED

JUL 01 2020

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY _____
DEPUTY CLERK

### ORDER OF AFFIRMANCE

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of two counts of battery with intent to commit sexual assault; three counts of assault with use of a deadly weapon; five counts of child abuse, neglect or endangerment with substantial bodily harm; eleven counts of sexual assault of a minor under 14 years of age; and twenty-five counts of child abuse, neglect or endangerment. Eighth Judicial District Court, Clark County; Valerie Adair, Judge. The convictions stem from appellant Janet Solander's abuse of her adopted children—A.S. (2001), A.S. (2003), and A.S. (2004).[1] Solander raises several issues on appeal.[2]

---

[1]Because all three victims have the same initials, we use their years of birth to distinguish them throughout the order.

[2]The State argues that Solander's briefing lacks citations to the record for many factual assertions, *see* NRAP 28(e)(1) (providing that "every assertion in briefs regarding matters in the record shall be supported by a reference to the page and volume number, if any, of the appendix"), and issues lacking such citations should not be considered. While we note that this dereliction made it unnecessarily difficult to resolve the claims raised on appeal, we have reviewed all of Solander's claims.

20-24367

*Sufficiency of the evidence*

Solander argues that the State failed to present sufficient evidence to support guilty verdicts for various counts. When reviewing the sufficiency of the evidence, we must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also Origel-Candido v. State*, 114 Nev. 378, 381, 956 P.2d 1378, 1380 (1998).

*Sexual assault of a minor under 14 and battery with intent to commit sexual assault*

Solander challenges her convictions of sexual assault of a minor under 14 years of age and battery with intent to commit sexual assault.[3] Each victim testified that Solander inserted a catheter into her genital opening against her will. A.S. (2001) testified that Solander catheterized her at least twice, described the catheter, and provided details of Solander inserting the catheter into her genital opening. A.S. (2003) testified that Solander inserted a catheter into her genital opening, though Solander threatened her with catheterization many times. A.S. (2004) testified that

---

[3]To the extent Solander challenges the propriety of the sexual assault charges based on catheterization, we have already decided that issue. *See State v. Solander (Solander I)*, Docket Nos. 67710 & 67711, at *9 (Order of Reversal and Remand, Apr. 19, 2016) (holding that the insertion of a catheter into an individual's urethra may constitute the crime of sexual assault where it was not "used for legitimate medical purposes"); *see also Hall v. State*, 91 Nev. 314, 315, 535 P.2d 797, 798 (1975) (holding that issues previously decided by this court are barred by the doctrine of the law of the case).

Solander catheterized her at least seven times and described where the assaults occurred.[4] A.S. (2004) also testified that when she resisted catheterization, Solander forcibly held her down. Further, the testimony from the victims and medical professionals showed the catheterization did not serve any legitimate medical purpose.

While the victims' testimony alone is sufficient to uphold Solander's sexual assault convictions, *see LaPierre v. State*, 108 Nev. 528, 531, 836 P.2d 56, 58 (1992) (providing that a victim's testimony alone is enough to support a conviction so long as it contains some particularity to provide reliable indicia that the number of charged acts occurred), other evidence corroborates that testimony. The State presented an email Solander sent to her husband with the subject line "300 cc's" with an attached photo of a catheter bag partially filled with a yellow liquid and a receipt for catheters, purchased by Solander's husband. Another child in Solander's care testified that Solander discussed catheter use. Solander's adult daughter, who lived in Solander's home with the victims, testified that catheters were present in the home, the victims discussed being catheterized, and she heard struggles in the bathroom. Considering all the evidence, we conclude a rational trier of fact could find the elements of sexual assault of a minor under 14 years of age and battery with intent to

---

[4]A.S. (2004) also testified that Solander inserted a paint stick into her genital opening. To the extent Solander challenges the sexual assault conviction based on that incident, we conclude sufficient evidence supports the jury's verdict. *See Gaxiola v. State*, 121 Nev. 638, 648, 119 P.3d 1225, 1232 (2005) (providing that a victim's uncorroborated testimony is sufficient to uphold a conviction).

commit sexual assault beyond a reasonable doubt for each of Solander's convictions. *See Bolden v. State*, 97 Nev. 71, 73, 624 P.2d 20, 20 (1981) (a jury's verdict will not be disturbed on appeal where sufficient evidence supports its verdict); *see also* NRS 200.366; NRS 200.400.[5]

> *Child abuse, neglect or endangerment resulting in substantial bodily harm*

Solander next challenges her convictions for child abuse with substantial bodily harm by means of spanking the victims with a paint stick. Specifically, Solander contends that the State failed to prove the timing or source of the scarring on the victims' buttocks and upper thighs and evidence showed the victims were abused previously by their biological family. However, "[w]here there is conflicting evidence it is the role of the trier of fact, not a court of errors, to resolve that conflict." *Gatlin v. State*, 96 Nev. 303, 304, 608 P.2d 1100, 1100 (1980). In this case, the victims' prior foster mother testified that the victims did not have any scarring on their buttocks or upper thighs when the girls were in her care. Solander's husband told a Clark County Department of Family Services (DFS) worker that the victims were disciplined by spanking with a paint stick. Each of the victims testified that they had been spanked with paint sticks with enough force to break their skin and cause bleeding. Other foster children in the home witnessed Solander beating the victims with paint sticks and rulers and saw bruising and scarring on the victims. Solander's adult daughter also testified to witnessing the spanking and resulting injuries. A

---

[5]The State filed criminal charges against Solander in 2014. To the extent statutes cited herein have been subsequently amended, we cite the current versions because the amendments do not affect our disposition.

doctor testified that, during the physical examination of the victims after they were removed from Solander's home, she noted linear scarring on the buttocks and upper thigh area of the victims' bodies. Based on this evidence, a rational trier of fact could have found each essential element of the crime beyond a reasonable doubt. *See* NRS 200.508(1).

*Count 11—child abuse, neglect or endangerment*

Lastly, Solander contends that the State failed to prove count 11 beyond a reasonable doubt because A.S. (2001) recanted the allegation. At trial, A.S (2001) testified about an incident where she urinated on the bathroom floor and Solander demanded she lick the urine off the floor, but A.S. (2001) refused. Subsequently, the State impeached A.S. (2001) with prior testimony that she did lick the urine off the floor during that incident.[6] A.S. (2001)'s testimony from the preliminary hearing supported the crime charged, and it was within the jury's province to determine her credibility at trial when she gave contradictory testimony, *Allen v. State*, 99 Nev. 485, 487, 665 P.2d 238, 240 (1983) ("[W]henever conflicting testimony is presented, it is for the jury to determine what weight and credibility to give to that testimony."). Thus, a rational trier of fact could have found each

---

[6]To the extent Solander assigns error to the State's impeachment of A.S. (2001) and related argument to the jury, we conclude her contention is without merit. *See Rugamas v. Eighth Judicial Dist. Court*, 129 Nev. 424, 432, 305 P.3d 887, 893 (2013) ("Inconsistent statements may be used as impeachment evidence consistent with NRS 50.075 . . . and NRS 50.135."); *Jones v. State*, 113 Nev. 454, 467, 937 P.2d 55, 63 (1997) (observing that a prosecutor may "argue inferences from the evidence and offer conclusions on contested issues").

essential element of the crime beyond a reasonable doubt. *See* NRS 200.508(1).

*Challenge to the constitutionality of NRS 200.508(1)*

Solander argues that NRS 200.508(1) is unconstitutionally vague because no reasonable person would be on notice that the statute prohibited her conduct.[7] A statute is presumed to be constitutional, and the party challenging its constitutionality "has the burden of making a clear showing of invalidity." *State v. Castaneda*, 126 Nev. 478, 481, 245 P.3d 550, 552 (2010) (internal quotations marks omitted). A statute is void for vagueness "(1) if it fails to provide a person of ordinary intelligence fair notice of what is prohibited; or (2) if it is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Id.* at 481-82, 245 P.3d at 553 (internal quotation marks omitted).

This court has held that NRS 200.508 is constitutional "and adequately defines its terms so that a person of ordinary intelligence would have notice of the prohibited conduct," *Rimer v. State*, 131 Nev. 307, 325, 351 P.3d 697, 711 (2015), and Solander has not demonstrated otherwise.

---

[7]Solander also argues that NRS 200.508(1) is overbroad and ambiguous. However, she does not analyze the statutory language. Instead, she contends the State's charging language renders the statute constitutionally deficient. We conclude this argument lacks merit. *See Shue v. State*, 133 Nev. 798, 805, 407 P.3d 332, 338 (2017) ("The first step in overbreadth analysis is to construe the challenged statute; it is impossible to determine whether a statute reaches too far without first knowing what the statute covers." (quoting *United States v. Williams*, 553 U.S. 285, 293 (2008))), *cert. denied*, ___ U.S. ___, 139 S. Ct. 117 (2018); *State v. Catanio*, 120 Nev. 1030, 1033, 102 P.3d 588, 590 (2004) (providing that a statute is ambiguous only if the "language lends itself to two or more reasonable interpretations").

NRS 200.508(1) prohibits a person from causing a child "to suffer unjustifiable physical pain or mental suffering." In this case, Solander's conduct—e.g., forcing the victims to sit on toilets made from buckets throughout the day, dumping pitchers of ice on the victims while they showered, requiring the victims to hold their urine and bowel movements for extended periods of time, not allowing the victims to use beds or bedding, withholding food and water for extended periods of time, and making a victim stand in a garbage bag while urinating and defecating on herself—is clearly prohibited under the statute. Because a reasonable person would understand that Solander's conduct would be prohibited under the child abuse and neglect statute and subject to criminal liability, we conclude Solander has not shown that NRS 200.508(1) is unconstitutionally vague.

*Sufficiency of the information*

In a related claim, Solander argues that the counts charging abuse based on conduct occurring "for extended periods of time" did not provide her with sufficient notice. Constitutional challenges to the sufficiency of an information or indictment—e.g., constitutional notice requirements—are reviewed de novo. *See Rimer*, 131 Nev. at 325, 351 P.3d at 710; *see also* NRS 173.075(1) (providing the general requirements for an indictment or information).

Here, the State alleged that all 46 counts occurred between January 19, 2011, and November 11, 2013, which is permitted under Nevada law. *See Cunningham v. State*, 100 Nev. 396, 400, 683 P.2d 500, 502 (1984) ("Unless time is an essential element of the offense charged, there is no absolute requirement that the state allege the exact date, and the state may instead give the approximate date on which it believes the crime occurred."). The information alleged some counts of abuse by specific

means that occurred "for an extended period of time." We conclude these are sufficient factual allegations to provide Solander with notice of the conduct alleged to violate the statute. *See* NRS 173.075(1) ("[T]he information must be a plain, concise and definite written statement of the essential facts constituting the offense charged."). Further, the information identified the statute for child abuse, the temporal period, and the location where the acts occurred. Thus, we conclude that the information provided Solander with adequate notice and meets constitutional requirements. *See Rimer*, 131 Nev. at 325, 351 P.3d at 710.

*Prior-bad-act evidence*

Solander argues that the district court erred by admitting evidence of her care and treatment of other foster children in her custody. NRS 48.045(2) prohibits the use of "[e]vidence of other crimes, wrongs or acts . . . to prove the character of a person in order to show that the person acted in conformity therewith." However, such evidence may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.* This court requires the proponent of the evidence to show that "(1) the [incident] is relevant to the crime charged and for a purpose other than proving the defendant's propensity, (2) the act is proven by clear and convincing evidence, and (3) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice." *Bigpond v. State*, 128 Nev. 108, 117, 270 P.3d 1244, 1250 (2012). A district court's decision to admit prior-bad-act evidence is reviewed for an abuse of discretion. *Newman v. State*, 129 Nev. 222, 231, 298 P.3d 1171, 1178 (2013).

Here, because Solander challenges the relevance and the danger of unfair prejudice of the prior-bad-act evidence, we limit our

analysis accordingly. Regarding relevance, the district court properly held an evidentiary hearing and was within its discretion to admit the evidence of Solander's treatment of other foster children in her custody. The evidence was relevant for multiple nonpropensity purposes. First, the evidence showed that Solander had motive and intent to control the bodily functions of the victims, which resulted in abusive conduct. *See Ledbetter v. State*, 122 Nev. 252, 262, 129 P.3d 671, 678 (2006) (reaffirming "that whatever might motivate one to commit a criminal act is legally admissible to prove motive under NRS 48.045(2)" (internal quotation marks omitted)). Second, the evidence tended to prove her knowledge and intent that, despite seeking diagnoses from multiple physicians, the children did not suffer from the medical conditions she alleged, but she continued her abusive toileting and diet rules and excessive corporal punishment. *See Newman*, 129 Nev. at 232-33, 298 P.3d at 1179 ("[A] parent's other disciplinary acts can be the most probative evidence of whether his or her disciplinary corporal punishment is imposed maliciously, with an intent to injure, or with a sincere desire to use appropriate corrective measures." (quoting *State v. Taylor*, 701 A.2d 389, 396 (Md. 1997))). Finally, the evidence tended to show the lack of mistake or accident in Solander's assertion that all the children in her care suffered from digestive, dietary, and toileting issues that required unusual treatment. *See Hubbard v. State*, 134 Nev. 450, 458, 422 P.3d 1260, 1267 (2018) ("Absence of mistake or accident is grounded in the law of probabilities. 'Innocent persons sometimes accidently become enmeshed in suspicious circumstances, but it is objectively unlikely that will happen over and over again by random chance.'" (quoting Edward J. Imwinkelried, *An Evidentiary Paradox: Defending the Character Evidence*

*Prohibition by Upholding a Non-Character Theory of Logical Relevance, the Doctrine of Chances,* 40 U. Rich. L. Rev. 419, 423 (2006))).

Regarding prejudice, we conclude the danger of unfair prejudice did not substantially outweigh the probative value of the evidence, and the State presented overwhelming evidence of Solander's guilt, *see Ledbetter,* 122 Nev. at 263, 129 P.3d at 679 (concluding that the danger of unfair prejudice "was minimal" because of "the overall strength of the State's case"). Therefore, we conclude the district court did not abuse its discretion by admitting evidence of Solander's treatment of other foster children in her care.

*Jury instructions*

Solander argues that the district court erred by rejecting her proposed jury instruction defining sexual penetration and her mistake-of-fact instruction. "The district court has broad discretion to settle jury instructions, and this court reviews the district court's decision for an abuse of that discretion or judicial error." *Crawford v. State,* 121 Nev. 744, 748, 121 P.3d 582, 585 (2005). Whether an instruction correctly states the law presents a legal question that is reviewed de novo. *Nay v. State,* 123 Nev. 326, 330, 167 P.3d 430, 433 (2007).

Solander asserts that her proffered instruction defining sexual penetration comports with this court's decision in *Solander I.* It did not. We explained in *Solander I* that "sexual penetration" does "not require sexual gratification or motivation." Docket Nos. 67710 & 67711, at *4-5. Solander's proposed instruction implied the opposite by stating that "sexual penetration is logically confined to activities which are the product of sexual behavior or libidinal gratification." Solander's mistake-of-fact instruction similarly misstated the law because it suggested that a person is not

SUPREME COURT
OF
NEVADA

(O) 1947A

10

criminally liable for sexual assault if the penetration is part of a medical procedure, without qualifying that it must be for a *legitimate* medical procedure. As this court previously held, Solander could "avoid criminal liability under NRS 200.366" if she "undertook the catheterization for a bona fide medical purpose."[8] *Id.* at 8-9. Because Solander's proposed instructions misstated the law, the district court did not abuse its discretion by rejecting them. *See Geary v. State*, 110 Nev. 261, 265, 871 P.2d 927, 929 (1994) ("[A] criminal defendant is not entitled to an instruction which incorrectly states the law.").

*Motion to dismiss*

Solander argues that the district court erred by denying her motion to dismiss the assault and battery counts because they may have occurred outside the three-year statute of limitations under NRS 171.085(3). "Questions of law are reviewed de novo." *Bailey v. State*, 120 Nev. 406, 407, 91 P.3d 596, 597 (2004).

Here, the district court denied the motion to dismiss and instructed the jury that the State had to prove the assault and battery charges occurred within the three-year limitations period under NRS 171.085(3). Under Nevada law, "criminal statutes of limitation [are] non-jurisdictional, affirmative defenses." *Hubbard v. State*, 112 Nev. 946, 948, 920 P.2d 991, 993 (1996). The jury instruction provided Solander with the

---

[8]The "medical purpose" exemption to the sexual assault statute, presently codified at NRS 200.364(9), which the Legislature added in 2015, *see* 2015 Nev. Stat., ch. 399, § 7(5), at 2235, did not apply to the conduct at issue here because the crimes occurred before that provision's effective date, *see* 2015 Nev. Stat., ch. 399, § 27(3), at 2245. But the decision in *Solander I* is consistent with that amendment.

 

appropriate affirmative defense to the charges. Thus, the district court did not err by denying Solander's motion to dismiss the assault and battery counts.

*Motion to strike expert witnesses*

Solander argues that the district court erred by admitting expert testimony despite the State's failure to strictly comply with the requirement to provide the opposing party with the expert witnesses' curriculum vitae (CV) under NRS 174.234(2)(b). If the prosecution, acting in bad faith, fails to comply with NRS 174.234(2), then the trial court must not allow the witness to testify and must not admit any evidence the expert would have produced at trial. NRS 174.234(3)(b). However, where there is no bad faith, it is within the trial court's sound discretion to admit or exclude the testimony or to grant a continuance. NRS 174.295(2); *Mitchell v. State*, 124 Nev. 807, 818-19, 192 P.3d 721, 729 (2008).

Here, the State filed its notice of expert witnesses, identifying the witnesses and summarizing their expected testimony. However, the State did not attach the CVs as required under NRS 174.234(2)(b). Solander does not allege the State acted in bad faith, and the district court concluded that Solander did not show prejudice. *See Jones v. State*, 113 Nev. 454, 473, 937 P.2d 55, 67 (1997) (concluding "that Nevada case law establishes that failure to endorse a witness constitutes reversible error only where the defendant has been prejudiced by the omission"). On appeal, Solander makes the conclusory allegation that the deficient notice resulted in "an ambush of last-minute, medical and highly technical scientific evidence." Solander does not identify or specify which witness or what testimony resulted in an "ambush," nor does she assert what she would have done differently if provided the witnesses' CVs. *See Burnside v. State*, 131

Nev. 371, 384, 352 P.3d 627, 637 (2015). Further, nearly all of the expert witnesses were healthcare providers for the victims and other foster children while in Solander's care;[9] thus, Solander knew these providers were likely to testify about their observations and treatment of the children, which usually occurred in her presence. *See Mitchell*, 124 Nev. at 819 & n.24, 192 P.3d at 729 & n.24; *Jones*, 113 Nev. at 473, 937 P.2d at 67. The defense knew the names of the witnesses and their expected testimony, and thus, could not be unfairly surprised by the testimony due to not having the witnesses' CVs. Therefore, we conclude that the district court did not abuse its discretion by admitting the expert testimony and Solander is not entitled to relief on this claim.

*Motion to suppress*

Solander argues that the district court erred by denying her motion to suppress the victims' statements to Florida and Nevada child welfare services. A district court's resolution of a motion to suppress evidence presents a mixed question of law and fact. *State v. Beckman*, 129 Nev. 481, 485, 305 P.3d 912, 916 (2013). The district court's findings of fact

[9]It appears two witnesses were not treating physicians—the doctor who examined the victims after they were removed from Solander's custody and the law enforcement officer who downloaded electronic evidence. As to the first, the State included the doctor in its notice of witnesses and Solander received her CV. As to the officer, Solander requested a continuance after the State provided his CV the day he testified. The district court ruled that Solander could recall the officer if his CV warranted any additional cross-examination, and that it would be grounds for a mistrial if Solander subsequently discovered any impropriety with the collection of evidence.

SUPREME COURT
OF
NEVADA

(O) 1947A

13

are reviewed for clear error but the legal consequences of those factual findings are reviewed de novo. *Id.* at 486, 305 P.3d at 916.

Here, based on reports of abuse, the victims were interviewed in Florida at the behest of DFS. DFS interviewed the victims again when they returned to Nevada. After hearing argument by counsel, the district court denied the motion under NRS 432B.270(1). NRS 432B.270(1) authorizes child welfare services to interview a child "without the consent of and outside the presence of any person responsible for the child's welfare" when investigating a report of child abuse or neglect. We conclude the district court's finding is not clearly erroneous and the district court properly denied the motion to suppress. Moreover, Solander does not address NRS 432B.270(1) on appeal, *see Maresca v. State*, 103 Nev. 669, 673, 748 P.2d 3, 6 (1987) ("It is appellant's responsibility to present relevant authority and cogent argument . . . ."), and we are otherwise unpersuaded by her contentions.[10]

_____

[10]Solander also contends the district court erred by denying her motion to sever the sexual assault counts; however, she did not provide citations to the record, NRAP 28(e)(1), or include the relevant transcript in the record. *See* NRAP 30(b)(1) ("Copies of all transcripts that are necessary to the . . . review of the issues presented on appeal shall be included in the appendix."); *Thomas v. State*, 120 Nev. 37, 43 n.4, 83 P.3d 818, 822 n.4 (2004) ("Appellant has the ultimate responsibility to provide this court with 'portions of the record essential to determination of issues raised in appellant's appeal.'" (quoting NRAP 30(b)(3))). Given the incomplete record, we conclude the district court did not abuse its discretion. *See Riggins v. State*, 107 Nev. 178, 182, 808 P.2d 535, 538 (1991) (providing that "the missing portions of the record are presumed to support the district court's decision"), *rev'd on other grounds by Riggins v. Nevada*, 504 U.S. 127 (1992).

*Prosecutorial misconduct*

Finally, Solander argues that the prosecution committed misconduct by vouching for a witness. When considering claims of prosecutorial misconduct, the reviewing court must determine whether the prosecutor's conduct was improper and, if so, whether the conduct warrants reversal. *Valdez v. State*, 124 Nev. 1172, 1188, 196 P.3d 465, 476 (2008).

During closing argument, the prosecutor entered the witness box to describe A.S. (2001)'s demeanor on the stand. Solander objected, and the district court concluded that the prosecutor's conduct did not constitute improper witness vouching. The prosecutor did not make any personal assurances of A.S. (2001)'s credibility. *See Browning v. State*, 120 Nev. 347, 359, 91 P.3d 39, 48 (2004) ("The prosecution may not vouch for a witness; such vouching occurs when the prosecution places 'the prestige of the government behind the witness' by providing 'personal assurances of [the] witness's veracity.'" (alteration in original) (quoting *United States v. Kerr*, 981 F.2d 1050, 1053 (9th Cir. 1992) (internal quotation marks omitted))). Rather, the prosecutor only commented on A.S. (2001)'s demeanor and appropriately argued that the jury could consider her behavior while testifying. *See McNair v. State*, 108 Nev. 53, 56, 825 P.2d 571, 573 (1992) ("[I]t is the jury's function . . . to assess the weight of the evidence and determine the credibility of witnesses"). Therefore, we conclude Solander has not shown that the prosecutor's conduct was improper. *See Rowland v. State*, 118 Nev. 31, 40, 39 P.3d 114, 119 (2002) (providing that it is within the discretion of the trial court "to determine when appropriate argument

on witness credibility becomes improper vouching for a witness or the inappropriate use of the prosecutor's power").[11]

Accordingly, we

ORDER the judgment of conviction AFFIRMED.

_____ , J.
Gibbons

_____ , J.
Stiglich

_____ , J.
Silver

_____

[11]We have considered Solander's other claims that the district court erred during sentencing by imposing the mandatory penalty, *see Mendoza-Lobos v. State*, 125 Nev. 634, 640, 218 P.3d 501, 505 (2009) (providing that legislatures have the "power to prescribe mandatory sentences that divest the courts of any discretion in imposing a sentence" (citing *Chapman v. United States*, 500 U.S. 453, 467 (1991))); the district court erroneously limited questions during the victim impact statements, *see Bushnell v. State*, 95 Nev. 570, 572, 599 P.2d 1038, 1039 (1979) ("[T]he permissible extent of cross-examination is largely within the sound discretion of the trial court."); and cumulative error warrants reversal, *see Lipsitz v. State*, 135 Nev. 131, 139 n.2, 442 P.3d 138, 145 n.2 (2019) (concluding that there were no errors to cumulate when the court found only a single error), and conclude they are without merit.

cc: Hon. Valerie Adair, District Judge
The Law Office of Kristina Wildeveld & Associates
Attorney General/Carson City
Clark County District Attorney
Eighth District Court Clerk

SUPREME COURT
OF
NEVADA

(O) 1947A