IN THE SUPREME COURT OF THE STATE OF NEVADA

DEVIN GILLILAND,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 79903

FILED

OCT 23 2020

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

## ORDER AFFIRMING IN PART AND REVERSING IN PART AND REMANDING

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of two counts of sexual assault of a child under 14 years of age and lewdness with a child under the age of 14. Eighth Judicial District Court, Clark County; Eric Johnson, Judge.

Though appellant Devin Gilliland was an adult at the time of trial, the underlying charges stem from his sexual assault of his then ten-year-old sister-in-law, C.S., when he was a minor. At trial, C.S. testified with specificity about Gilliland digitally penetrating her, which occurred while she slept next to her sister at the apartment her sister and Gilliland shared. In addition to C.S.'s testimony, the State presented multiple audiotaped confessions from Gilliland, as well as testimony from the witnesses to whom he confessed.

At trial, Gilliland challenged the composition of the jury, based both on the alleged lack of representation of African American and Native American venire persons, and the State's striking of Prospective Juror #7 ("Juror #7"). The State's peremptory strike of Juror #7 followed that prospective juror's admission that he "gave the Defendant like a head nod" when he walked into the room because Gilliland "was the only other brother in the room," and the State's apparent agreement that this "could be a particular bias." The district court rejected Gilliland's constitutional

20-38921

complaints regarding the jury, which ultimately convicted Gilliland on the three counts noted above.

At sentencing, Gilliland sought a reduction in the potential sentences he faced under Nevada's mandatory minimum statutes—35 years to life, and 10 years, respectively—based on his having been a minor at the time of the offenses. *See* NRS 176.017 (requiring the district court to consider the differences between juvenile and adult offenders before sentencing and allowing a court discretion to reduce a sentence by 35%). The district court considered his minor status at the time of the offenses. But the court also noted that multiple witnesses testified at trial that, even as an adult, Gilliland had attempted to blame C.S. for provoking the sexual assault. In light of what it characterized as Gilliland's repeated attempts in deflecting responsibility, the district court therefore determined that Gilliland remained a risk to the community and "that a significant sentence [was] necessary to deter [him] from future conduct." Declining to depart from the relevant mandatory minimums, the district court sentenced Gilliland to serve concurrent prison terms totaling 35 years to life.

Gilliland's appeal raises multiple challenges, only one of which we find has merit. Specifically, Gilliland argues that the State did not present sufficient evidence to support two separate charges of sexual assault of a child under 14 years of age, because the events as C.S. described them were part of a single continuous assault. In part, this argument by Gilliland is a redundancy challenge—that is, his claim requires us to examine the question of if and when "separate and distinct acts of sexual assault committed as a part of a single criminal encounter may be charged as separate counts and convictions entered thereon." *Deeds v. State*, 97 Nev. 216, 217, 626 P.2d 271, 272 (1981). We review de novo. *Jackson v. State*, 128 Nev. 598, 603-04, 612, 291 P.3d 1274, 1277, 1283 (2012) (noting that

"unit of prosecution" cases, "[w]hile sometimes using 'redundancy' language, . . . recognize that determining the appropriate unit of prosecution presents an issue of statutory interpretation and substantive law") (internal quotations omitted); *see Camacho v. State*, 119 Nev. 395, 399, 75 P.3d 370, 373 (2003) (stating that legal questions are reviewed de novo and factual questions are reviewed for sufficiency of the evidence). With regard to the more general question of sufficiency of the evidence presented, we consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," leaving to the jury any determinations as to the weight and credibility to give conflicting testimony. *Gaxiola v. State*, 121 Nev. 638, 650, 119 P.3d 1225, 1233 (2005) (emphasis and internal quotations omitted).

Our precedent establishes that an intentional pause in and resumption of the offensive conduct is required to establish legally separate violations of the same statute. *See Crowley v. State*, 120 Nev. 30, 34, 83 P.3d 282, 285 (2004) (holding lewdness convictions redundant where offender "rub[bed] the male victim's penis on the outside of his pants [as] a prelude to . . . fellatio" because the offender "never interrupted his actions"); *Wright v. State*, 106 Nev. 647, 650, 799 P.2d 548, 549 (1990) (holding charges not redundant because "[t]he testimony of the victim established that between the attempted and completed assaults, [the assailant] stopped and waited while a car passed"); *Townsend v. State*, 103 Nev. 113, 121, 734 P.2d 705, 710 (1987) (holding "that the act of fondling the child's breasts was a separate act of lewdness, particularly in light of the fact that Townsend stopped that activity before proceeding further"). *See also Deeds*, 97 Nev. at 216-17, 626 P.2d at 272 (holding charges not redundant for forced sexual intercourse and fellatio where they occurred in different rooms).

Accordingly, the jury could only have appropriately convicted Gilliland on two counts of sexual assault to the extent that there were two "separate and distinct" acts of digital penetration that were interrupted and subsequently continued. *See Gaxiola*, 121 Nev. at 652, 119 P.3d at 1235.

In light of this precedent, even reviewing the evidence in the light most favorable to the prosecution, our review of the record reveals that no rational trier of fact could have found the essential elements of two distinct counts of sexual assaults here. Admittedly, as the State points out, C.S. described the event as Gilliland "moving [his finger] in and out [of her vagina] and twisting it around," and then agreed that his finger "[came] out of [her] vagina and then [went] back in." But the fact that Gilliland's finger went in and out of C.S.'s vagina more than once is not alone dispositive; as noted, the question is whether there was an intentional pause in and resumption of his conduct. *See Gaxiola*, 121 Nev. at 652, 119 P.3d at 1235. And, while C.S. did reiterate on cross-examination that Gilliland "took [his finger] in and out [of her vagina] repeatedly" over a period of a few minutes, she also clarified to the jury that when Gilliland's finger was out of her vagina "[i]t wasn't, you know, a break. It was in those few minutes, he repeatedly took it out and put it back in." C.S. additionally described the repeated penetration as "all consecutive." *Id.* C.S.'s explicit clarifying testimony and the record as a whole only supports one count of sexual assault under our precedent. Accordingly, we reverse Gilliland's second conviction for sexual assault of a child under 14 years of age.[1]

_____

[1]To the extent the State suggests that we need not reverse the conviction because Gilliland was not "prejudiced" by the redundant convictions with concurrent sentences, this is clearly not the law. *Cf. Rippo v. State*, 113 Nev. 1239, 1251, 946 P.2d 1017, 1025 (1997) (recognizing that the State has an inherent duty to "refrain from improper methods

We reject Gilliland's remaining challenges. Gilliland argues that he was entitled to an evidentiary hearing on whether his venire was comprised of a fair cross-section of the community, which we review de novo. *See Williams v. State*, 121 Nev. 934, 939, 125 P.3d 627, 631 (2005); *see also Manning v. State*, 131 Nev. 206, 209-10, 348 P.3d 1015, 1018 (2015) (stating that constitutional issues are reviewed de novo). But the district court did not err by denying Gilliland a hearing on this claim—viewed together, the actual and comparative disparities between the number of African and Native Americans in the venire and the overall population do not establish that the venire representation "is not fair and reasonable in relation to the number of such persons in the community." *Williams*, 121 Nev. at 940, 125 P.3d at 631 (emphasis and internal quotations omitted) (setting requirements for prima facie case of a fair cross-section claim); *see Morgan v. State*, 134 Nev. 200, 208, 416 P.3d 212, 222 (2018) (discussing absolute and comparative disparities in tandem).

As to Gilliland's *Batson* claim, even under a "highly deferential" standard, *Flowers v. Mississippi*, ___ U.S. ___, ___, 139 S. Ct. 2228, 2244 (2019) (internal quotations omitted), we agree that the district court erred by holding he had not established a prima facie *Batson* claim. But despite the district court's erroneous ruling as to the first step regarding the *Batson* claim, the State later offered race neutral reasons for the strike: the State had previously prosecuted Juror #7, and he had served jail time as a result. *Brannan v. State*, 561 S.E.2d 414, 422 (2002) (holding it race neutral to

---

calculated to produce a wrongful conviction") (quoting *Berger v. United States*, 295 U.S. 78, 88 (1935)).

strike a juror who had previously been charged with a criminal offense).[2] Accordingly, we believe that the record reflects that the district court ultimately reached the right result by denying Gilliland's *Batson* claim, despite its error involving the first step. *See* <u>*Kaczmarek v. State*</u>, 120 Nev. 314, 334-35, 91 P.3d 16, 30 (2004) (addressing *Batson* steps two and three even though the district court did not adequately articulate its analysis where the record included the State's reasons for exercising the peremptory challenges and did not demonstrate any discriminatory motives).

Nor did the district court abuse its discretion by rejecting Gilliland's proposed jury instruction referencing how C.S.'s testimony lacked corroboration, and instead using the State's instruction, indicating that a victim's testimony "standing alone, if believed beyond a reasonable doubt, is sufficient to sustain a verdict of guilty." *Crawford v. State*, 121 Nev. 744, 748, 121 P.3d 582, 585 (2005) (reviewing propriety of jury instructions for abuse of discretion). It may well be that, as Gilliland indicates, his defense relied on the argument that C.S. was lying, such that the asserted lack of corroboration of her account would be relevant.[3] But we have previously approved a "no corroboration" instruction like that used by the State here in a sexual assault case, despite an objection nearly identical to Gilliland's. *Gaxiola*, 121 Nev. at 649, 119 P.3d at 1233 (stating

---

[2]Gilliland attempts to invoke *Flowers* here by referencing past discrimination by Clark County prosecutors. However, we are not convinced that *Flowers* is on point, as Gilliland does not tie his proffer to his particular prosecutor or case. *Flowers*, ___ U.S. at ___, 139 S. Ct. at 2245 (considering evidence of discrimination by same prosecutor in cases against same defendant, trying the same charges).

[3]As noted, Gilliland admitted to the assault on multiple occasions, and in the recordings of his confessions he offers details that, at least arguably, corroborate C.S.'s testimony.

that "[a]lthough the historical imbalance between victim and accused in sexual assault prosecutions has been partially redressed in recent years, there remains a continuing vitality in instructing juries that there is no legal requirement of corroboration") (quoting *People v. Gammage*, 828 P.2d 682, 687 (Cal. 1992) (citation and internal quotations omitted)).

Gilliland's claim under *Brady v. Maryland*, 373 U.S. 83 (1963), likewise fails. While we are troubled by the State's failure to turn over Gilliland's videotaped confession pursuant to NRS 174.235, Gilliland fails to offer a specific reason as to why the videotape could have revealed evidence favorable to his defense and his "mere speculation" is not a sufficient basis. *Wood v. Bartholomew*, 516 U.S. 1, 6 (1995) (rejecting *Brady* claim where it was "based on mere speculation, in violation of the standards [the Court has] established").

Gilliland also argues that the district court erred by refusing to depart from mandatory sentencing minimums according to NRS 176.017. But the district court "has wide discretion in imposing a sentence, and that determination will not be overruled absent a showing of abuse of discretion." *Houk v. State*, 103 Nev. 659, 664, 747 P.2d 1376, 1379 (1987). Indeed NRS 176.017(2) specifically provides that after considering the factors set forth in subsection 1, a "the court *may, in its discretion,* reduce any mandatory minimum period of incarceration that the person is required to serve by not more than 35 percent *if the court determines that such a reduction is warranted given the age of the person and his or her prospects for rehabilitation.*" (Emphases added.) Here, after considering Gilliland's age when he assaulted C.S.—the then 10-year-old sister of his pregnant fiancée while the sisters slept in the same bed—the district court also considered Gilliland's repeated insistence that C.S. had provoked him to do so. In light of these facts, the court specifically "question[ed] [Gilliland's] potential for

Supreme Court
of
Nevada

(O) 1947A

7

rehabilitation." We conclude the district court did not abuse its discretion, even in light of Gilliland's arguments that he "was brought up in a sexualized atmosphere as a child," had mental health issues, and claims to have never physically abused C.S. again.[4]

Finally, we review for plain error an argument that Gilliland raises for the first time on appeal regarding alleged prosecutorial misconduct. *Rose v. State*, 123 Nev. 194, 208-09, 163 P.3d 408, 418 (2007). Gilliland points to certain statements the prosecutor made during closing, which were phrased in the second person—"*if you're a child and you have something like this happen to you, you're going to remember how it felt*"; "*if you are a victim of this crime, you're going to remember these details about the night that this happened*"; "those are kind of vivid details that when something like this . . . *you'll remember how it feels, what things felt like inside of you.*" It is improper for a prosecutor to make a "golden rule" argument that suggests "that the jurors should place themselves in the position of the victim." *McGuire v. State*, 100 Nev. 153, 157, 677 P.2d 1060, 1064 (1984). However, it is not clear that these particular statements were intentionally inflammatory "golden rule" arguments rather than an inarticulate argument—interspersed between the sentences quoted above, the prosecutor also said, "That's a detail that someone recalls if this actually happens to them," and "[T]hat's not something that a child kind of would make up unless it happened to them." In any case, given the strength of C.S.'s testimony and Gilliland's multiple recorded confessions, we conclude that plain error does not apply here. *Valdez v. State*, 124 Nev. 1172, 1190,

---

[4]Evidence was presented that Gilliland had also made and retained videos of C.S. showering.

196 P.3d 465, 477 (2008) (holding that plain error must affect defendant's substantial rights to be reversible error).

Accordingly, Gilliland has only demonstrated one error requiring this court's corrective action—insufficiency of evidence involving a second conviction for sexual assault, which is remedied here by our reversal of that conviction. There being no additional errors to cumulate, his argument that cumulative error requires reversal of his remaining convictions lacks merit. *See United States v. Sager*, 227 F.3d 1138, 1149 (9th Cir. 2000) (holding that there is no cumulative error where only one error found).

Accordingly, we

ORDER the judgment of conviction AFFIRMED IN PART AND REVERSED IN PART AND REMAND this matter to the district court to amend the judgment of conviction consistent with this order.

_____, J.
Gibbons

_____, J.
Stiglich

_____, J.
Silver

cc:　Hon. Eric Johnson, District Judge
　　　Special Public Defender
　　　Attorney General/Carson City
　　　Clark County District Attorney
　　　Eighth District Court Clerk